UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:20-CV-00247-FDW-DCK

| | |
|---|---|
| RODDRICK ACKER and NYCHARZEKE HINTON-ACKER, </br></br>    Plaintiffs, </br></br> vs. </br></br> STATES MORTGAGE COMPANY, INC., and BRENNA OLBERDING, </br></br>    Defendants. | ORDER |

THIS MATTER is before the Court on Plaintiffs Roddrick Acker and Nycharzeke Hinton-Acker's Motion to Dismiss (Doc. No. 8), requesting this Court dismiss Defendant's Counterclaims raised in their Answer (Doc. No. 7) pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the ground that this Court does not have supplemental jurisdiction over the counterclaims under 28 U.S.C. § 1367. (Doc. No. 8). Defendant has responded, (Doc. No. 12), Plaintiff has replied, (Doc. No. 13), and this motion is now ripe for review. For the reasons stated below, Plaintiffs' Motion to Dismiss (Doc. No. 8) is GRANTED.

I. BACKGROUND

This action arises out of Plaintiffs Roddrick Acker ("Acker") and Nycharzeke Hinton-Acker's ("Hinton-Acker") (together "Plaintiffs") employment with Defendants States Mortgage Company, Inc. ("SMC") and Brenna Olberding ("Olberding") (together "Defendants"). (Doc. No. 1, p. 1). According to the Complaint, SMC is a mortgage brokerage company that provides brokerage services to individuals seeking home loans, and Olberding is the President and majority shareholder of SMC. Id. at 2, 4. Plaintiffs allege they "were employed by [SMC] as hourly-paid Mortgage Processors whose primary job duties involved processing [SMC's] client's loan

1

requests" and "were paid once monthly." Id. Specifically, Plaintiffs contend Defendants employed Acker from approximately October 25, 2018, through January 15, 2020, with rates that ranged from $18.00 to $21.00 per hour, and Hinton-Acker from approximately February 27, 2019, through January 9, 2020, with a rate of $25 per hour. Id. at 5.

Plaintiffs allege Defendants did not pay Plaintiffs an overtime premium for hours worked exceeding 40 hours each workweek during their employment. Id. In support of this allegation, Plaintiffs claim pursuant to SMC's policy regarding recording time sheets, they were required to send an email to their employer's email each time they clocked in or out of work. Id. Plaintiffs contend they were further instructed by Kevin Casper, SMC Processing Manager, "they were not allowed to put the actual time they worked on their time sheets" and that instead, "they were required to record a maximum of 8 hours for each regular workday they worked, regardless of the number of hours they actually worked." Id. Additionally, Plaintiffs allege that although they were allowed to take unpaid lunch breaks, they "regularly worked through all or part of their unpaid lunch breaks," and "[r]egardless of whether Plaintiffs worked during their lunch, Defendants automatically deducted an hour of Plaintiffs' recorded time every workday for Plaintiffs' lunch break." Id. Finally, Plaintiffs contend Defendants did not pay them on their regular paydays on multiple occasions. Id. at 6.

In response to the Complaint, Defendants' Answer alleged "Plaintiffs became disgruntled with their employment with SMC, and in so doing began a campaign to harm and ruin SMC's business and Olberding's good name, all without provocation or good cause." (Doc. No. 7, p. 7). Defendants contend Plaintiffs voluntarily resigned from their employment with Defendants, after which Plaintiffs allegedly made defamatory statements about Defendants to current and former SMC employees and third-parties. Id. at 7-8. Specifically, Defendants claim Plaintiffs falsely

informed one or more former SMC employees that Defendants "intended to embezzle from SMC's former employees." Id. at 8. Defendants allege this "damaged" Defendants' relationship with that former employee, which "remains unrepaired and harmed by Plaintiff's callous actions." Id. at 9. Further, Defendants contend, "Plaintiffs made several false reports to administrative agencies" around February 27, 2020, and such statements "were false, and were further calculated solely to harm the Defendants, and to cause them the additional trouble and stress that accompanies investigations by regulatory authorities." Id.

On April 24, 2020, Plaintiffs filed their Complaint (Doc. No. 1), alleging claims for: (1) willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), including by "failing to timely pay all overtime wages earned by Plaintiffs," by "failing to pay Plaintiffs an overtime premium rate of pay for all hours worked in excess of forty in a workweek," and by "failing to comply with the timekeeping and recording provisions of the FLSA"; and (2) willful violations of the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.6 and 95-25.7, by "fail[ing] to pay all wages earned by Plaintiffs on their regularly scheduled paydays, including the next regular payday following the termination of Plaintiffs' employment." (Doc. No. 1, p. 7-8). Plaintiff contends this Court has original federal question jurisdiction over the claims brought under FLSA, and it has supplemental jurisdiction over Plaintiff's North Carolina statutory and common law claims for violations of the NCWHA. (Doc. No. 1, p. 2-3). Defendants filed a Motion for Extension of Time to Answer Plaintiff's Complaint (Doc. No. 5), which this Court granted on May 19, 2020 (Doc. No. 6). On June 9, 2020, Defendants filed their Answer to Plaintiff's Complaint (Doc. No. 7).

In their Answer, Defendants brought Counterclaims alleging two claims for relief: (1) defamation *per se*, and (2) defamation *per quod*. (Doc. No. 7, p. 9-10). Defendants contend this

3

Case 3:20-cv-00247-FDW-DCK   Document 14   Filed 08/13/20   Page 3 of 13

Court has supplemental jurisdiction over such counterclaims pursuant to 28 U.S.C. § 1367. (Doc. No. 7, p. 7). In response, on June 30, 2020, Plaintiffs filed a Motion to Dismiss Defendants' Counterclaims for Lack of Jurisdiction (Doc. No. 8) and a Memorandum in Support (Doc. No. 9). Defendants then filed a Motion for Extension of Time to File a Response (Doc. No. 10) which this Court granted on July 14, 2020. On July 21, 2020, Defendants filed their Response in Opposition to Plaintiff's Motion (Doc. No. 12), and Plaintiffs filed their Reply (Doc. No. 13) on July 28, 2020.

## II. STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of claims where the Court lacks jurisdiction over the subject matter of the lawsuit. FED. R. CIV. P. 12(b)(1). Lack of subject matter jurisdiction may be raised at any time by a litigant or the court itself. Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3).

Plaintiff has the burden of proving that subject matter jurisdiction exists. See Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). When a defendant challenges subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, 945 F.2d at 768. The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.; see also Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999).

## III. ANALYSIS

4

In analyzing whether a court has jurisdiction over a defendant's counterclaim, 28 U.S.C. § 1367(a) establishes, in civil actions in which "the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Further, "[i]f the counterclaim is compulsory, it is within the ancillary jurisdiction of the court to entertain and no independent basis of federal jurisdiction is required." Painter v. Harvey, 863 F.2d 329, 331 (4th Cir. 1988). "If the counterclaim is permissive, however, it must have its own independent jurisdictional base." Id. Finally, a compulsory counterclaim is one which "arises out of the transaction or occurrence that is the subject matter of the opposing party," whereas a permissive counterclaim does not. FED. R. CIV. P. 13(a)-(b). Thus, where neither diversity nor federal question jurisdiction exists over a defendant's counterclaims, "the designation of the counterclaim [as 'compulsory' or 'permissive'] is critical." Painter, 863 F.2d at 331.

To determine whether a claim is "compulsory" or "permissive," the Fourth Circuit has suggested four inquiries:

> (1) Are the issues of fact and law raised in the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute the claim as well as the counterclaim? And (4) Is there any logical relationship between the claim and counterclaim?

Id. (citing Sue & Sam Mfg. co. v. B-L-S Constr. Co., 538 F.2d 1048, 1051-53 (4th Cir. 1976)). Because these tests "are less a litmus, more a guideline," the Court is not required to answer all four inquiries in the affirmative for a counterclaim to be compulsory. Painter, 863 F.2d at 331. However, "there is an underlying thread to each of them in this case: evidentiary similarity." Id. Thus, if a district court has valid jurisdiction over a federal claim, it has the discretion to exercise

supplemental jurisdiction over additional state claims if they "derive from a common nucleus of operative fact" such that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding." United Mine Workers of America v. Gibbs, 383 U.S. 715, 725-6 (1966). Because supplemental jurisdiction "lies in considerations of judicial economy, convenience and fairness to litigants . . . if these are not present a federal court should hesitate to exercise jurisdiction over state claims." Id.

Plaintiffs request the Court dismiss Defendants' Counterclaims for Defamation *Per Se* and Defamation *Per Quod* for lack of subject matter jurisdiction. (Doc. No. 9, p. 1). Specifically, Plaintiffs contend "Defendants' counterclaims are permissive and do not arise out of the same 'common nucleus of operative facts' as Plaintiffs' FLSA and NCWHA claims." (Doc. No. 8, p. 2). In response, Defendants allege their counterclaims are compulsory and "go to the heart of several of their defenses and affirmative defenses to the Plaintiffs' claims, in that the defamation engaged in by the Plaintiffs serves to undermine the Plaintiffs' credibility and capacity to tell the truth," and as such they allege this Court has jurisdiction pursuant to 28 U.S.C. § 1367(a). (Doc. No. 12, p. 1). Because the Court finds the answer to each of the aforementioned four inquiries is no, the Court concludes Defendants' counterclaims for defamation are permissive and as such must be dismissed.

**A.     Issues of Fact and Law Raised in Plaintiffs' Claims and Defendants' Counterclaims**

To determine whether a counterclaim is compulsory or permissive, the first inquiry is whether "the issues of fact and law raised in the claim and counterclaim [are] largely the same[.]" Painter, 863 F.2d at 331. Here, Plaintiffs contend "[t]here are no common legal or factual issues that arise between Plaintiffs' [FLSA and NCWHA] claims and Defendants' counterclaims for defamation." (Doc. No. 9, p. 3). Conversely, Defendants claim certain issues of fact and law will

6

be largely the same. (Doc. No. 12, p. 3). Specifically, Defendants argue because "Plaintiffs admit that their reporting of their own time is a core issue in this case," Plaintiffs will be required to provide oral testimony and as such, "[w]hether or not the Plaintiffs are being truthful in making the claims before this court is an essential component of both the Defendants' defense before a jury in this matter *and* central to the Defendants' counterclaims." Id. at 3-4. However, the Court agrees with Plaintiffs that the issues of fact and law raised in Plaintiffs' claims and Defendants' counterclaims are not largely the same.

Here, Plaintiffs have brought claims alleging Defendants violated the FLSA and NCWHA by failing to pay Plaintiffs overtime for their work at SMC and by failing to pay Plaintiffs all wages earned through the end of their employment. (Doc. No. 9, p. 3). As such, to prevail on these claims, Plaintiffs will be required to rely on the FLSA and NCWHA, regulations and court decisions interpreting those statutes, and evidence that can demonstrate whether they were actually entitled to overtime, whether they were paid overtime, and whether they were paid properly for total hours worked during their employment by SMC. Id. at 3. To this end, Plaintiffs will rely on evidence related to job duties, total work hours, payroll policies, and payroll records. (Doc. No. 13, p. 4).

Conversely, Defendants' counterclaims assert causes of action for defamation *per se* and defamation *per quod*. (Doc. No. 7, p. 9-10). Specifically, Defendants contend from January to February 2020, Plaintiffs made false statements to former SMC employees "alleg[ing] Defendants intended to embezzle from SMC's former employees" and "made several false reports to administrative agencies." Id. at 8-9. Notably, the bulk of the relevant time period for the counterclaims falls outside the relevant time period for Plaintiffs' claims. In addition, to prevail on their defamation claims, Defendants will be required to rely on state laws and court decisions interpreting defamation claims, as well as facts surrounding the alleged false statements Plaintiffs

7

made, most of which took place after the employment relationship ended.

Although Defendants assert they intend to introduce Plaintiffs' allegedly false statements as evidence pertaining to Plaintiffs' credibility as an affirmative defense, that does not remedy the fact that Defendants' claims for defamation will rely on different law than Plaintiffs' claims under the FLSA and NCWHA. Similarly, Defendants' intent to highlight Plaintiffs' alleged conduct does not change the circumstances that will comprise the factual basis of each party's argument. While Plaintiffs' argument is focused on events that took place during, and through the end of, their employment with SMC, Defendants counterclaims are focused on events that mostly took place after Plaintiffs' employment with SMC ended. Further, Plaintiffs' claims relate to wages and overtime payments, whereas Defendants' counterclaims relate to alleged false statements regarding embezzlement and not wages. Therefore, the Court finds the issues of fact and law raised in Plaintiffs' claim and Defendants' counterclaim are not largely the same. As such, this weighs in favor of dismissal.

**B. Res Judicata**

Additionally, to establish whether a counterclaim is compulsory or permissive, the Court must determine whether "res judicata [would] bar a subsequent suit on the party's counterclaim, absent the compulsory claim rule[.]" Painter, 863 F.2d at 331. The elements of res judicata are: "(1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of the parties or their privies in the two suits." Nash Cty. Bd. Of Ed. V. Biltmore Co., 640 F.2d 484, 486 (4th Cir. 1981). See also Hogan v. Cone Mills Corp., 63 N.C.App. 439, 442, 305 S.E.2d 213, 215 (1983).

Here, Plaintiffs correctly point out and Defendants do not allege otherwise, the doctrine of res judicata would not bar Defendants from bringing a subsequent suit on their counterclaims. (Doc. No. 9, p. 4). Although the third element would be met, as the parties would remain the same

8

in a subsequent suit, the first and second elements would not be met. First, dismissal of Defendants' counterclaims for lack of jurisdiction does not constitute a final judgment "on the merits," so the first element would not be met. FED. R. CIV. P. 41(b). Second, Defendants' counterclaims for defamation and Plaintiffs' claims under the FLSA and NCWHA are not identical, and as such the second element would not be met. Thus, because res judicata would not bar a subsequent suit on Defendants' counterclaims, this inquiry weighs in favor of dismissal.

## C. Substantially the Same Evidence

Another question the Court must answer to determine whether a counterclaim is compulsory or permissive is whether "substantially the same evidence [will] support or refute the claim as well as the counterclaim[.]" Painter, 863 F.2d at 331. "Where . . . the same evidence will support or refute both the claim and counterclaim, the counterclaim will almost always be compulsory." Id. at 332. Further, the "same evidence test thus accomplishes the purposes of Fed.R.Civ.P. 13(a), because the very purpose of making certain types of counterclaims compulsory is to prevent the relitigation of the same set of facts." Id. (internal quotations omitted).

Here, Plaintiffs allege "[t]he evidence that will establish or refute Plaintiffs' claims will not have any evidentiary value to Defendants' counterclaims." (Doc. No. 8, p. 4). In contrast, Defendants assert "substantially the same evidence will refute [Plaintiffs'] claim as well as support [Defendants'] counterclaims." (Doc. No. 12, p. 3). Specifically, Defendants contend because they intend to use Plaintiffs' allegedly defamatory conduct as an affirmative defense to show "Plaintiffs lied at times in close proximity to both the cessation of their employment with [SMC] *and the filing of their Complaint*[,] . . . the refutation of the claims in the Complaint and proof of the Defendants' Counterclaims will, in fact, involve the exact same evidence." Id. at 4-5. The Court, however, agrees with Plaintiffs that substantially the same evidence will not support or refute Plaintiffs' claims as well as Defendants' counterclaims.

9

As Plaintiffs allege, their FLSA and NCWHA claims will largely rely on evidence showing Defendants' agreement to pay Plaintiffs, the number of hours Plaintiffs worked, and Defendants' failure to pay Plaintiffs. (Doc. No. 8, p. 4). Such evidence will largely consist of time records, payroll documents, and other similar documents from the period of Plaintiffs' employment with SMC through the separation of their employment with Defendants. Id. Conversely, Defendants' counterclaims will rely on evidence demonstrating Plaintiffs' alleged defamatory conduct, which largely took place after their employment with Defendants concluded. (Doc. No. 7, p. 7-9).

Defendants attempt to rely on Federal Rules of Evidence to support their contention that there will be evidentiary similarity between Plaintiffs' claims and Defendants' crossclaims. (Doc. No. 12, p. 4). Specifically, Defendants assert that their intent to use Plaintiffs' allegedly defamatory conduct as an affirmative defense to Plaintiffs' claims will result in substantially the same evidence refuting Plaintiffs' claims and supporting Defendants' counterclaims. Id. Defendants are correct they are entitled to present relevant evidence "to the end of ascertaining the truth and securing a just determination" at trial, as prescribed by, and within the limits of, the Federal Rules of Evidence. FED. R. EVID. 102. However, evidence tending to show credibility problems for testifying witnesses does not overcome the fact that much of the relevant evidence for Plaintiffs' FLSA and NCWHA claims will be focused on documentation and testimony surrounding whether Defendants properly paid Plaintiffs for overtime and hours worked. The counterclaim allegations tend to show the relevant evidence for Defendants' defamations claims will be focused on testimony surrounding alleged statements Plaintiffs made regarding embezzlement and false reports to different administrative agencies. Thus, the Court finds substantially the same evidence will not support or refute Plaintiffs' claims as well as Defendants' counterclaims. Therefore, this inquiry weighs in favor of dismissal.

**D. Logical Relationship Between Plaintiffs' Claims and Defendants' Counterclaims**

Finally, before deciding whether a counterclaim is compulsory or permissive, the Court must also determine whether "there is any logical relationship between the claim and the counterclaim[.]" Painter, 863 F.2d at 331. Here, Plaintiffs contend "there is 'no logical relationship' between Plaintiffs' claims and Defendants' counterclaims" other than the employer-employee relationship, which they contend is not sufficient for establishing a common nucleus of operative fact. (Doc. No. 9, p. 5). Conversely, Defendants assert there is a logical relationship in that "Plaintiffs have falsified evidence and made false statements about the Defendants in an effort to harm them, and continue to do so in this action." (Doc. No. 12, p. 5). However, the Court agrees with Plaintiffs that there is an insufficient logical relationship between Plaintiffs' claims under the FLSA and NCWHA and Defendants' counterclaims for defamation.

As Plaintiffs point out, "[F]ederal courts have been reluctant to exercise supplemental jurisdiction over state law claims and counterclaims in the context of a FLSA suit where the only connection is the employee-employer relationship." Williams v. Long, 558 F.Supp.2d 601, 604 (D. Md. 2008) (finding the employer-employee relationship was not sufficient). Further, "several courts have rejected the notion that the employer-employee relationship single-handedly creates a common nucleus of operative fact between the FLSA claim and peripheral state law claims." Wilhelm v. TLC Lawn Care, Inc., 2008 WL 640733, at *3 (D. Kan. March 6, 2008) (citing Lyon v. Whisman, 45 F.3d 758, 762-64 (3d Cir. 1995) (where employment relationship is the only link between FLSA claim and state law claims, no common nucleus of operative fact exists and Article III bars supplemental jurisdiction); Rivera v. Ndola Pharmacy Corp., 497 F.Supp.2d 381, 395 (E.D.N.Y. 2007) (employment relationship is insufficient to create a common nucleus of operative fact where it is the sole fact connecting FLSA claim to state law claims); Hyman v. WM Fin. Servs., Inc., No. 06-CV-4038, 2007 WL 1657392, at *5 (D.N.J. June 7, 2007) (exercising

11

supplemental jurisdiction over state law claims unrelated to FLSA claim "would likely contravene Congress's intent in passing the FLSA"); Whatley v. Young Women's Christian Assoc. of Nw. La., Inc., No. 06-423, 2006 WL 1453043, at *3 (W.D.La. May 18, 2006) (general employer-employee relationship does not create common nucleus of operative fact between FLSA claim and state law claims); Kirby v. Tafco Emerald Coast, Inc., No. 3:05CV341, 2006 WL 228880, at *2 (N.D.Fla. Jan. 30, 2006) (state law counterclaims for breach of contract and failure to repay promissory note do not share a common nucleus of operative fact with FLSA claim where the only factual connection is the business relationship of the parties)).

Defendants' contend they "intend to show that the Plaintiffs' claims asserted herein fit within a larger context of their malicious and false allegations against the Defendants" as support that a logical relationship exists between the claims and counterclaims. (Doc. No. 12, p. 5). However, "[t]he substantive sections of the FLSA, narrowly focusing on minimum wage rates and maximum working hours, bear out its limited purposes[,]" and there is "no indication that Congress passed the FLSA with the expectation that it was authorizing federal courts to exercise far-reaching jurisdiction over state-law disputes arising from employment relationships." Lyon, 45 F.3d at 764. See also Brennan v. Heard, 491 F.2d 1, 4 (5th Cir. 1974) ("To clutter [FLSA] proceedings with the minutiae of other employer-employee relationships would be antithetical to the purpose of the Act.") rev'd on other grounds.

Here, the only connection between Plaintiffs' FLSA and NCWHA claims and Defendants' defamation counterclaims is Plaintiffs' employment with Defendants, which ended early in the time period Defendants contend defamatory statements were made. Further, Plaintiffs' claims will focus on acts, evidence, and testimony that occurred during and up until the end of their employment with Defendants, whereas Defendants' counterclaims will focus on statements,

12

evidence, and testimony surrounding events that occurred at the end of and after Plaintiffs' employment with Defendants ended. As such, the Court finds the employer-employee relationship is not sufficient to establish a common nucleus of operative fact between the claims and counterclaims. Under these facts, there is an insufficient logical relationship between Plaintiffs' claims and Defendants' counterclaims. Thus, this inquiry weighs in favor of dismissal.

## IV. CONCLUSION

The Court finds: (1) the issues of fact and law raised in Plaintiffs' claims and Defendants' counterclaims are not largely the same; (2) res judicata would not bar a subsequent suit on Defendants' counterclaims, absent the compulsory counterclaim rule; (3) substantially the same evidence will not support or refute both Plaintiffs' claims and Defendants' counterclaims; and (4) there is not a logical relationship between Plaintiffs' claims and Defendants' counterclaims. Thus, the Court concludes Defendants' counterclaims are permissive, and as subject to dismissal for the reasons stated herein. However, to the extent any of Defendants' allegations are relevant to the testimony of any witness at trial, the Court's ruling herein is without prejudice to any parties' ability to present any relevant evidence to impeach a witness or object thereto.

Therefore, for the forgoing reasons, Plaintiffs' Motion to Dismiss Defendant's Counterclaims (Doc. No. 8) is GRANTED.

IT IS SO ORDERED.

Signed: August 13, 2020

Frank D. Whitney
United States District Judge

13

Case 3:20-cv-00247-FDW-DCK   Document 14   Filed 08/13/20   Page 13 of 13